UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALAN WOE, a pseudonym and a certified
sex offender,

                                    MEMORANDUM AND ORDER

              Plaintiff,                    CV 07-1726

      -against-                            (Wexler, J.)

ELIOT SPITZER, as Governor of the State
of New York, DENIS O'DONNELL, as
Commissioner of the New York State
Division of Criminal Justice Services,
and the STATE OF NEW YORK,

             Defendants.
-----------------------------------------------------------X

APPEARANCES:

    JOHN RAY AND ASSOCIATES
    BY: JOHN RAY, ESQ.
    Attorneys for Plaintiff
    P.O. Box 5440
    Miller Place, New York 11764-1117

    ANDREW M. CUOMO,
    ATTORNEY GENERAL OF THE STATE OF NEW YORK
    BY: SUSAN M. CONNOLLY, ESQ.
    Attorneys for Defendants
    300 Motor Parkway, Suite 205
    Hauppauge, New York 11788

WEXLER, District Judge

       This is a civil rights action in which Plaintiff, referred to herein only by the pseudonym,

"Alan Woe" ("Plaintiff") alleges a deprivation of his right to due process of law as guaranteed by

the United States Constitution. Plaintiff seeks to have this court hold a provision of the New

York State Sex Offender Registration Act of 1995, codified at Section 168-h(1) of the New York

State Correction Law ("SORA"), unconstitutional.[1] Presently before the court is Defendants' motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss the complaint. For the reasons set forth below, the motion is granted and the complaint is dismissed.

## BACKGROUND

### I. Factual Background

The relevant facts supporting Plaintiff's claim are not in dispute and are set forth below.

Plaintiff is a designated sex offender pursuant to the terms of SORA. At the time of his designation, Plaintiff was required to register as a sex offender with law enforcement authorities for a period of ten years. That period began as of the date of enactment of SORA, January 21, 1996. Three days before the ten year period was set to expire, SORA was amended to provide for a twenty year period of registration for sex offenders classified within Plaintiff's category of risk. Thus, instead of Plaintiff's registration period expiring on January 21, 2006, it is now set to expire on January 21, 2016.

### II. Plaintiff's Complaint

Plaintiff does not challenge the Constitutionality of SORA as a whole. Instead, this action is limited to the claim that the statutory amendment extending the registration period from ten to twenty years has deprived Plaintiff of his right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiff argues that the newly amended statutory scheme deprives him of the procedural right to petition for relief

---

[1] By stipulation of the parties dated August 14, 2007, Plaintiff agreed to discontinuance of this action against the Governor of the State of New York and the Commissioner of the New York State Division of Criminal Justice Services. Thus, the sole remaining defendant is the State of New York.

2

from the twenty year registration requirement.

III.     Defendant's Motion

Defendants seek dismissal of the complaint on the ground that the amendment to the registration period required under SORA implicates no constitutionally protected right to liberty and therefore no due process rights are due to Plaintiff. Defendant further argues that even assuming the implication of a constitutionally protected right, Plaintiff has received all of the process that is due. After outlining the relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I.     Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim of relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of

the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852*2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

With these principles in mind, the court holds that Plaintiff's complaint makes clear the theory of his claim. The court holds further that the relevant facts here are not in dispute and the case is ripe for decision on the pleadings.

II.  The Sex Offender Registration Act

   A.  The Statute

SORA requires that sex offenders, defined to include individuals convicted of certain enumerated crimes, register with the New York State Division of Criminal Justice Services for a specified period of time. See generally N.Y. Corr. L. §168; see Doe v. Pataki, 120 F.3d 1263, 1266 (2d Cir. 1997). The time period of required registration, and the level of community notification depends upon the "risk level" assigned to the offender. See N.Y. Corr. L. §168-l(6). That level is assessed based upon the risk that the offender poses to the community as determined by the New York State Board of Sex Offenders, created by SORA (the "Board"). See N.Y. Corr. L. §168-l. The several factors considered by the Board when determining the appropriate

4

risk level include whether the offender has a mental abnormality or personality disorder, whether the offender's conduct was characterized by repetitive and compulsive behavior, the age of the offender and of the victim, the use of weapons, and the number of prior offenses. See N.Y. Corr. L. §168-l(5). These factors are used to determine the risk of re-offense and the threat posed by the individual. Upon recommendation by the Board, the sentencing court assigns a risk level to the sex offender. See generally N.Y. Corr. L. §168-n.

Sex offenders with a low risk of re-offense are designated as "level one" offenders. N.Y. Corr. L. §168-l(6)(a); Doe, 120 F.3d at 1269. As the risk of re-offense increases, the offender can move from classification of a level one to a level three offender – the highest level. See generally Doe, 120 F.3d at 1269-70. Upon registration, information regarding level one sex offenders is disseminated to local law enforcement agencies. These agencies may disseminate certain identifying information regarding level one offenders, upon request to "any entity with vulnerable populations related to the nature of the offense committed . . . ." N.Y. Corr. L. §168-l(6)(a). Information may thereafter be disseminated at the discretion of the entity receiving the information. N.Y. Corr. L. §168-l(6)(a).

Level one sex offenders are assigned a shorter period of registration and the information regarding these individuals is more limited than the scope of information allowed to be disseminated as to higher level offenders. For example, SORA provides that information disseminated as to level one offenders "may" include a photograph, while the dissemination of information as to level two and three offenders "shall" include a photograph of the sex offender. See N.Y. Corr. L. §168-l(6)(a)(b)(c).

When SORA was enacted, level one sex offenders were required to register on a yearly

5

basis for ten years. Sexually violent predators were required to register more often and faced a potential lifetime registration requirement. See Doe, 120 F.3d at 1267. SORA was thereafter amended to increase the period of registration for level one sex offenders from ten to twenty years. N.Y. Corr. L. §168-h(1). At the same time, the period of registration for higher risk sex offenders was increased to annual lifetime registration with, in certain cases, the requirement of personal address verification every ninety days. N.Y. Corr. L. §§168-h(2)(3).

SORA provides for modification of findings of the sentencing court. Level two sex offenders, who are now subject to lifetime registration (and have not been designated as sexual predators, sexually violent offenders or predicate sex offenders), may, after registering for a period of thirty years, petition the court to be relieved of the requirement to register. N.Y. Corr. L. §168-o(1). This section of SORA does not apply to level one offenders, nor could it since it applies only after a sex offender has registered for a thirty year period – ten years after the expiration of the registration period for a level one sex offender. There is no separate provision that explicitly provides a procedure for a level one sex offender to petition to shorten the twenty year period of registration. See N.Y. Corr. L. §168-o(1) (applying to level two sex offenders).

There is, however, a SORA provision that allows any sex offender to petition a court for an order "modifying the level of notification." See N.Y. Corr. L. §168-o(2) (applying to "any" sex offender required to register). Thus, any level three sex offender may petition to be designated a level two offender, and any level two offender may petition to be designated as a level one offender. In the case of a level one sex offender, who has already been assigned the lowest level of risk, this would seem to include the right to seek a ruling that would relieve the offender from any designation and, thus, any registration requirement.

B.  Prior SORA Litigation

Shortly after the effective date of SORA, a class action was filed challenging the Constitutionality of the statute's application to those convicted prior to its effective date. See Doe v. Pataki, 940 F. Supp. 603 (S.D.N.Y.1996). While the District Court enjoined the community notification provision as violative of the ex post facto clause of the Constitution, the Second Circuit reversed. The appellate court, reasoning that the community notification provision was not "punishment," rejected the ex post facto challenge and upheld SORA in its entirety. Doe v. Pataki, 120 F.3d 1263, 1285 (2d Cir. 1997). The case was thereafter remanded to the District Court to consider Plaintiffs' procedural due process claim.

On remand, the district court held that the registration and community notification provisions of SORA implicated Constitutionally protected liberty interests and that the procedures for determining sex offender risk levels did not adequately protect those interests. Doe v. Pataki, 3 F. Supp.2d 456, 467-68 (S.D.N.Y. 1998). The district court entered an injunction providing for procedural safeguards prior to the court's ruling on risk level determination including, inter alia, the requirement of a court hearing, notice of the hearing and recommendations of the Board as well as representation by counsel. Following entry of the district court's injunction, the parties entered into settlement discussions. Those discussions culminated in an agreement pursuant to which the parties agreed to detailed procedures for conducting redetermination hearings for level two and three sex offenders and notification of the right to such hearings. Doe v. Pataki, 481 F.3d 69, 73-74 (2d Cir. 2007). These procedures are now included in SORA. See generally N.Y. Corr. L. §168-n.

The litigation holding that SORA did not violate the ex post facto clause, and culminating

7

in the procedural due process settlement, did not address the issue of the permissibility of extending the duration of registration requirements. Instead, after disposition of the ex post facto question, that litigation was addressed solely at challenging the procedures for determining the risk level of sex offenders. Doe v. Pataki, 481 F.3d at 77. As to that issue, the holding of the District Court was clear. Plaintiffs were entitled to due process protection in connection with the determination of their risk level. Doe v. Pataki, 3 F. Supp.2d at 467-68. That issue was ultimately settled and not the subject of appellate litigation.

III. Disposition of the Motion

Plaintiff's claim is limited to the argument that the amendment of SORA that increased the time period of registration for level one offenders from ten to twenty years violates his right to procedural due process. Specifically, Plaintiff claims that the statute is constitutionally deficient in that it fails to allow level one sex offenders to petition for relief from the twenty year registration requirement, while allowing for such petitions by level two and three sex offenders.

To state a claim under the due process clause, a plaintiff must first show the existence of a constitutionally protected right. Second, plaintiff must show the deprivation of that right without due process of law. See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994); see Kentucky Dep't. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

Here, Plaintiff asserts a due process right to liberty that includes the right to seek employment, that has been infringed by his continued inclusion in the sex offender registry. The Supreme Court has held clearly that injury to reputation alone is insufficient to implicate a liberty right under the due process clause. Paul v. Davis, 424 U.S. 693, 702 (1976). Thus, to show a liberty interest, Plaintiff must show more than the stigma attached to his inclusion on the sex

8

offender registry. Specifically, he must show what has been referred to as "stigma plus," i.e., stigma accompanied by the potential loss of rights under law. Valmonte, 18 F.3d at 999; Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989). Where such rights are implicated, procedural due process rights attach. Id. at 711 ("procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter" protected status).

In Doe v. Pataki, 3 F. Supp.2d 456 (S.D.N.Y. 1998), the District Court held that inclusion in the SORA sex offender registry implicates a liberty interest entitled to due process protection. Specifically, the court noted that registration as a sex offender carries with it "shame, humiliation, ostracism, loss of employment . . . and a multitude of other adverse consequences" that result in a "tangible impairment of a right in addition to the harm to reputation." Id. at 467-68; see also Doe v. Poritz, 662 A.2d 367, 418-19 (1995) (construing New Jersey sex offender registration statute, and holding that harm to reputation coupled with harm to the Constitutional right to privacy, implicates a federally protected Constitutional interest).

The district court decision in Doe led to a settlement with the State of New York and passage by the New York State Legislature of extensive procedural due process protections regarding risk level assessment. In view of the fact that the case was settled, the issue of the existence of a liberty interest implicated by registration was not addressed by the Second Circuit. While the District Court holding in Doe is therefore not binding on this court, the Second Circuit's decision in Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994), supports Plaintiff's claim that inclusion in the SORA registry implicates a liberty right sufficient to trigger procedural due process protections.

In Valmonte, the Second Circuit held that inclusion in a state registry of suspected child

9

abusers, maintained by the Department of Social Services, implicated a liberty right to future employment. Noting that certain prospective employers are required to consult this registry before making hiring decisions, the Second Circuit held that Plaintiff satisfied the "stigma plus" requirement set forth by the Supreme Court in Paul. Thus, the Second Circuit held that the plaintiff in Valmonte established more than an injury to her reputation that might impair "job prospects or for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." Valmonte, 18 F.3d at 1001. Instead, the Second Circuit held that plaintiff's inclusion in the registry, and the requirement that prospective child care employers consult that registry prior to making hiring decisions, deprived her of the right to seek certain employment, by operation of law, sufficient to implicate the protections of the due process clause. Id.

It is not a great leap to assume that prospective child care employers are similarly required or inclined to consult the SORA registry before making hiring decisions. Indeed, SORA's provision that groups with "vulnerable" populations are entitled to SORA information appears to contemplate the dissemination of this information to this precise pool of employers. Additionally, SORA itself places a limit on prospective employment by sex offenders providing that those required to register may not be employed on, or dispense goods for sale as, ice cream truck vendors. N.Y. Corr. L. §168-v. The court concludes, therefore, that Plaintiff has shown that SORA registration effects a protected liberty interest.

The holding that SORA registration implicates a protected liberty right does not lead, as a matter of course, to the conclusion that there is a right to maintain a ten, as opposed to twenty year, registration requirement. This argument is, essentially, that the State has improperly

increased the period of punishment. As such, it is akin to the ex post facto argument before the Second Circuit in Doe, which argued that SORA's registration requirement should not be applied to those convicted prior to passage of the statute. To the extent that Plaintiff's argument is based upon this theory, is foreclosed by precedent of the Second Circuit in Doe as well as a subsequent decision of the Supreme Court in Smith v. Doe, 538 U.S. 84 (2002). In these cases it was held that inclusion in a sex offender registry is a civil matter. As such, the ex post facto clause of the Constitution, which applies only to penal statutes, did not prohibit retroactive application of the registration requirement. See Doe v. Pataki, 120 F.3d at 1265 (New York SORA does not violate ex post facto clause); Smith v. Doe, 538 U.S. at 105-06 (retroactive application of Alaska sex offender registry statute does not violate ex post facto clause). Similarly here, Plaintiff cannot argue that extension of the of the period of registration from ten to twenty years constitutes a Constitutionally impermissible ex post facto punishment.

As to any procedural due process argument aimed at the issue of the duration of registration, a recent decision of the Second Circuit is instructive. In a case construing the Doe settlement, the court commented that if the matter had proceeded to final adjudication it would have been "extremely doubtful" that Plaintiffs would have been entitled to a judgment prohibiting the State from amending SORA as to the duration of registration requirement. Doe v. Pataki, 481 F.3d at 77. This court agrees and holds, therefore, that Plaintiff states no protected liberty interest in the right to a ten year period of registration. The liberty interest is implicated by the fact of registration, and not the length of the registration period. Plaintiff received all of the process due in connection with the court's determination as to his risk level. He was not entitled to further process upon extension of the period of registration.

11

Even assuming that Plaintiff's complaint somehow sets forth a protected liberty interest in the right to continuation of the ten year registration requirement, it is clear that the procedural amendments to SORA, passed as a result of the settlement of the Doe litigation, provide Plaintiff with all of the process that is due in connection with the determination of the risk level to be assigned. Indeed, Plaintiff himself took advantage of the redetermination hearing provided for in the settlement. At that time, Plaintiff was assigned the lowest level of risk. Plaintiff does not argue otherwise. Instead, he argues only that he was entitled to some sort of procedural protection when the State made the decision to increase the period of registration from ten to twenty years. Plaintiff seeks a mechanism protecting his "right" to a ten year period of registration.

The argument that the statute is Constitutionally deficient because it does not allow Plaintiff to petition the court for relief from further registration is, however, flawed. As noted above, SORA provides for modification of findings as to the level of risk and registration requirements. Plaintiff notes, and the Defendant concedes, that level two sex offenders may, after a thirty year period of registration, petition the court to be relieved of the requirement to register. N.Y. Corr. L. §168-o(1). It is also noted and conceded that there is no similar explicit provision allowing for a level one sex offender to petition to shorten the period of registration. See N.Y. Corr. L. §168-o(1) (applying to level two sex offenders).

However, all sex offenders required to register under SORA, including Plaintiff, are afforded the statutory right to petition a court for an order modifying the level of notification. See N.Y. Corr. L. §168-o(2). With respect to level one offenders, an adjustment of the risk level below level one would necessarily relieve the offender from any registration requirement.

12

Moreover, Plaintiff cannot argue that level two or three offenders are afforded a higher level of process than level one offenders. Any argument based upon the notion that level two and three offenders are in a better position than level one offenders must be rejected. This is because higher level offenders cannot petition the court for a reduction in the period of registration until after they have been registered for thirty years, ten years after the expiration of the registration period for level one offenders.

For the foregoing reasons, the court holds that Plaintiff states no liberty interest, protected by the due process clause, to maintenance of the SORA ten year registration requirement. To the extent that any such right is alleged, the statute affords Plaintiff all of the process that is due.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Plaintiff's complaint is dismissed. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip New York
August 4, 2008